UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRENDA K. SANDERS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DETROIT HOUSING COMMISSION,<br><br>　　　　　　　　　　Defendant. | Case No. 22-cv-10269<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO SUA SPONTE DISMISS COMPLAINT AND TO DENY AS MOOT PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTIVE RELIEF (ECF NO. 27) AND DEFENDANT'S MOTION TO STRIKE (ECF NO. 37)**

I.　**Introduction**

Plaintiff Brenda K. Sanders sues Defendant Detroit Housing Commission (DHC), a public housing agency, under 42 U.S.C. § 1983 for failing to admit her to a senior housing facility.  ECF No. 13.  Sanders moves for emergency injunctive relief, and DHC moves to strike Sanders's second amended complaint.  ECF No. 27; ECF No. 37.  The Honorable Laurie J. Michelson referred the case for all pretrial proceedings under 28 U.S.C. § 636(b).  ECF No. 20.  The Court **RECOMMENDS** that the case be

**DISMISSED** sua sponte for failure to state a claim and that Sanders's motion for injunctive relief and DHC's motion to strike be **DENIED** as moot.

## II.     Background

Sanders alleges that DHC failed to prioritize her application for placement in a senior housing facility.  ECF No. 13, PageID.38-39.  She asserts that DHC did not honor her preferred status based on her age, disability, homelessness, and being a victim of violence, in violation of Department of Housing and Urban Development (HUD) regulations, the Fair Housing Act (FHA), and the Violence Against Women Act (VAWA).  *Id.* at PageID.41-46.  Sanders also alleges discrimination in violation of the Elliott-Larsen Civil Rights Act (ELCRA) and breach of oral contract.[1]  *Id.* at PageID.44-46.

Sanders moves for emergency injunctive relief, arguing that DHC continues to delay her housing placement while she is living out of her car and fears for her health and safety.  ECF No. 27.  She asks the Court to order DHC to admit her to a senior housing facility.  *Id.* at PageID.100.  During a hearing held in August 2022, the Court questioned whether

---

[1] While Sanders also alleges discrimination in violation of the Michigan Fair Housing Act, that act was repealed and replaced by ELCRA.  *See* Mich. Comp. Laws § 564.101.  Sanders's second amended complaint clarifies that this claim arises under Mich. Comp. Laws § 37.2502, a section of ELCRA.  *See* ECF No. 36, PageID.193.

Sanders advanced viable claims sustaining jurisdiction under 28 U.S.C. § 1331 but permitted Sanders to file a motion for leave to amend by August 23, 2022. Sanders moved to amend, but the Court struck the motion for procedural deficiencies and directed Sanders to file a corrected motion by September 12. ECF No. 32. Sanders moved for more time, and the Court ordered Sanders to file a motion by September 19, warning that no more extensions would be granted. ECF No. 34. On September 12, Sanders filed a second amended complaint (SAC), without moving for leave to amend. ECF No. 36. DHC moves to strike the SAC. ECF No. 37.

The Court agrees with DHC that the SAC was improperly filed, as Sanders could amend her complaint "only with the opposing party's written consent or the court's leave," neither of which she obtained. See Fed. R. Civ. P. 15(a)(2). But since Sanders is a pro se litigant whose filings must be viewed with leniency, the Court views the SAC holistically as a proposed amended complaint. See Wolfel v. United States, 711 F.2d 66, 67 (6th Cir. 1983) ("[P]leadings submitted pro se will be accorded a measure of leniency to assure that meritorious claims will not be dismissed for inartful draftsmanship."). But even construed as such, the SAC fails to advance a plausible claim. The SAC includes the same factual allegations and claims as Sanders's first amended complaint but adds claims of retaliation under

the FHA and violation of the Americans with Disabilities Act (ADA). ECF No. 36, PageID.196-200.

The Court is sympathetic to Sanders's circumstances and does not discount the harm her homelessness has on her health and safety. Yet her complaint fails to state a claim and should be dismissed.

### III.   Analysis

### A.

Sanders has been granted leave to proceed without prepayment of the filing fee for this action due to her indigence. ECF No. 5. Under 28 U.S.C. § 1915(e)(2)(B), the Court has an obligation to screen suits where the plaintiff is proceeding in forma pauperis and to dismiss the action sua sponte if it fails to state a claim, is frivolous, or seeks monetary relief from immune defendants. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007). Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

**B.**

The Court evaluates the merits of the claims advanced in the SAC in turn and concludes that Sanders fails to state a viable claim.

**1.**

Sanders first claims that DHC failed to honor her preferred status in violation of Section 8 of the United States Housing Act, 42 U.S.C. § 1437f,[2] and attendant HUD regulations, 24 C.F.R. §§ 960.206 and 982.207. ECF No. 27, PageID.98; ECF No. 36, PageID.190. But the statute and regulations do not confer private rights enforceable under 42 U.S.C. § 1983.

Section 1983 provides a private right of action for deprivations of rights secured by the Constitution and federal laws. *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006). Three factors guide whether a federal statute is actionable under § 1983: "(1) Congress must have intended the provision to benefit the plaintiff; (2) the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the provision imposes a binding obligation on the state, *i.e.*, it must be couched in mandatory, rather than precatory, terms." *Id.* at 618-19 (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)) (cleaned up). The Sixth Circuit also explained:

> [S]tatutory language that merely benefits putative plaintiffs without specific rights-creating language is insufficient to confer

---

[2] In her motion for injunctive relief, Sanders cites *Drake v. Pierce*, 691, F. Supp. 264 (W.D. Wash. 1988), which involves preferences under Section 8.

> a personal federal right enforceable under § 1983. A plaintiff can no longer satisfy the first element of the *Blessing* test simply because he or she receives a benefit from the statute at issue or is within its zone of interest. Instead, under *Gonzaga*'s more exacting standard, the text and structure of the statute in question must be examined to determine whether Congress intended to create a federal right; such a right must be gleaned from unambiguous, explicit rights-creating language that focuses on rights, not broader or vaguer benefits or interests. Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.

*Id.* at 621 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282-83, 287 (2002) (cleaned up).

The Sixth Circuit held that § 1437f does not create an enforceable right. *Id.* at 262. That provision authorizes HUD to "enter into annual contributions contracts with public housing agencies [PHAs] pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section." 42 U.S.C. § 1437f(b)(1). The remaining subsections "set forth in detail the specific requirements of the annual contributions contracts." *Johnson*, 446 F.3d at 626. While public housing residents benefit from the provision, the Sixth Circuit concluded that "the language of § 1437f has an

aggregate focus on the entity being regulated, thereby belying any intent to create rights enforceable by individual tenants." *Id.* at 627.[3]

While *Johnson* involved the enforceability of housing quality standards, its rationale applies here. Section 1437f gives PHAs the discretion to establish preferences; it does not mandate preferences. §§ 1437f(d)(1)(A) (PHAs "may establish local preferences,"), (o)(6)(A) (PHAs "may establish a system for making tenant-based assistance under this subsection available on behalf of eligible families that provides preference…to eligible families having certain characteristics"), and (o)(13)(J) ("The agency may establish preferences or criteria for selection for a unit assisted under this paragraph that are consistent with the public housing agency plan for the agency."). Thus, there is no indication from the text that Congress intended to create a privately enforceable right.

---

[3] Courts in other districts have also concluded that § 1437f is not privately enforceable. *See, e.g.*, *Jeffries v. Dist. of Columbia*, 917 F. Supp. 2d 10, 45-46 (D.D.C. 2013) ("Nothing in the text of § 1437f, or even its legislative history, indicates an intent to establish a private right, let alone a private remedy to vindicate that right."); *Koroma v. Richmond Redevelopment & Housing Auth.*, No. 3:09cv736, 2019 WL 1704745, at *5-7 (E.D. Va. Apr. 27, 2010) (holding that §1437f was not privately enforceable because it "focus[es] primarily on the duties and authority of both the Secretary of HUD and the PHAs, along with the eligibility requirements of families").

Sanders cites *Drake v. Pierce*, which held that admission preferences under § 1437f were enforceable under § 1983. 691 F. Supp. at 273. But that case, decided in 1988, was based on an earlier version of the statute providing "that families falling within the three statutory categories 'shall be given' preference." *Id.* The court reasoned that "use of mandatory language and the fact that Congress made the statutory preferences binding regardless of the terms of HUD contribution contracts, demonstrate that Congress intended to make the preferences mandatory and self-executing." *Id.* at 274 (cleaned up). The court also reasoned that the provision was intended to benefit the plaintiffs. *Id.* at 275. But the current version of the statute does not mandate any preferences, and the Supreme Court's later decision in *Gonzaga* clarified that merely benefitting a class of individuals does not confer a private right of action. *See* 536 U.S. at 283.

Sanders also bases her claim on HUD regulations 24 C.F.R. §§ 960.206 and 982.207, which set forth guidelines for admission preferences for Section 8 and public housing programs. But administrative regulations do not confer enforceable rights under § 1983. *Johnson*, 446 F.3d at 629. Thus, Sanders fails to state a viable claim under Section 8 or the HUD regulations.

**2.**

Sanders asserts that DHC failed to honor her preferred status in violation of the FHA, 42 U.S.C. §§ 3603 and 3604. ECF No. 36, PageID.191-193. There is no question that these statutes are privately enforceable. See 42 U.S.C. § 3613. But they prohibit discrimination in the sale or rental of housing because of "race, color, religion, sex, familial status, or national origin," or handicap. §§ 3603 and 3604. Sanders cites no provision of the FHA establishing preferences.

Nor does Sanders plausibly allege a discrimination claim under the FHA. Her pleadings supporting her FHA claim involve DHC's alleged disregard of Sanders's preferred status. ECF No. 36, PageID.192-193. The final allegation vaguely asserts that Sanders "suffered severe harm and damages as a result of the Defendants' discrimination and failures." *Id.* at PageID.193. Elsewhere in the SAC, Sanders alleges that DHC staff sexually harassed her and engaged in "discriminatory conduct" based on her race, gender, religion, disability, and status as a stalking victim. *Id.* at PageID.188, 193-194, 197-198. But Sanders does not identify the allegedly discriminatory conduct.

Even if the SAC can be liberally read to allege that DHC denied Sanders housing based on discriminatory animus, she makes no factual

allegations supporting that conclusory statement. She thus fails to plausibly state a discrimination claim under the FHA. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613-14 (6th Cir. 2012) ("A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief."). At most, Sanders alleges that DHC "has sought to act collaboratively with [Sanders's] air stalking offenders to discriminate against the Plaintiff." ECF No. 36, PageID.193-194. But that allegation is simply too outlandish to support a discrimination claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (section 1915(e) authorizes dismissal when a claim is "clearly baseless," "fantastic," or "delusional").

The SAC also asserts an FHA retaliation claim, alleging that DHC refused Sanders housing because she filed this action. ECF No. 36, PageID.196-197. Under 42 U.S.C. § 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person" for exercising a right under the FHA. To succeed on a § 3617 claim, a plaintiff must show "that the defendant exercise[d] their powers with a discriminatory animus." *Campbell v. Robb*, 162 F. App'x 460, 473 (6th Cir. 2006) (cleaned up); *Youngblood v. Prudential Ins. Co.*, 706 F. Supp. 2d 831, 840 (M.D. Tenn. Feb. 11, 2010) ("[T]he court in *Campbell* recognized that even *retaliatory*

11

animus is insufficient to support an FHA interference claim under circuit law."). Since Sanders has not pleaded enough facts to show that DHC acted with discriminatory animus, her FHA retaliation claim also fails. Thus, Sanders has failed to state a claim under the FHA.

### 3.

Sanders also claims that DHC failed to honor her preferred status in violation of the VAWA, 34 U.S.C. § 12361.[4] ECF No. 36, PageID.195. Section 12361 was enacted to protect victims of gender-based violence and "establish[ed] a Federal civil rights cause of action for victims of crimes of violence motivated by gender." 35 U.S.C. § 12361(a), (c). But the Supreme Court struck down this civil remedy as unconstitutional. *United States v. Morrison*, 529 U.S. 598, 602 (2000).

Under another provision of the VAWA, 34 U.S.C. § 12475, Congress set forth regulations on PHAs' eligibility to receive federal grants. One condition for receiving funds is that the grantee develop programs and services "that give a preference in admission to adult and youth victims" of "domestic violence, dating violence, sexual assault, and stalking." 34 U.S.C. § 12475(c)(2)(B). But like Section 8, § 12475 focuses on PHAs as

---

[4] While Sanders cites 42 U.S.C. § 13981, that provision was transferred to 34 U.S.C. § 12361.

12

the regulated entity and contains no "unambiguous, explicit rights-creating language." See *Johnson*, 446 F.3d at 621. Thus, there is no indication that Congress intended to create a privately enforceable right, and Sanders has not stated a viable claim under the VAWA.

### 4.

Next, Sanders asserts discrimination claims under the ADA and ELCRA. ECF No. 36, PageID.193-194, 197-198. While the ADA generally prohibits disability-based discrimination, it "only regulates non-residential facilities." *Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *6-7 (E.D. Mich. Oct. 15, 2008). Thus, the ADA does not apply here.

Sanders is correct that ELCRA prohibits discrimination based on "religion, race, color, national origin, age, sex, height, weight, familial status, or marital status" in the contexts of real estate and housing. Mich. Comp. Laws §§ 37.2102, 37.2502(1)(a). But as noted, Sanders does not plausibly allege that DHC discriminated against her.

### 5.

Last, Sanders alleges a breach of oral contract. ECF No. 36, PageID.199-200. She claims that a DHC employee told her that she would

13

be admitted into a senior housing unit but then DHC has failed to honor that commitment. *Id.*

The DHC employee's alleged representation is not an oral contract. To form a valid contact, there must be a meeting of the minds on all essential terms. *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453 (2006). Terms essential to a lease contract include identification of "the parties, property, consideration, premises and time of performance." *Lorimer v Berrelez*, 331 F. Supp. 2d 585, 591 (E.D. Mich. 2004). Sanders does not allege that she and DHC agreed on any of these specifics, including the exact unit, lease term, or amount of rent. Rather, her allegations show that the employee made only "vague, indefinite statements in no instance rising to the dignity of a contract." *See Scarlett v. Allen*, 295 Mich. 694, 702-03 (1940) (cleaned up); *see also Odom v. Univ. of Mich.*, No. 16-12791, 2017 WL2117978, at *7 (E.D. Mich. May 16, 2017) ("An employer's vague statements or those 'couched in general terms, more akin to stating a policy as opposed to offering an express contract' are insufficient to indicate an intent to form a contract for permanent employment."). Sanders's breach of oral contract claim should be rejected.

14

## IV. Conclusion

The Court **RECOMMENDS** that Sanders's case be **DISMISSED** sua sponte for failure to state a claim and that Sanders's motion for injunctive relief (ECF No. 27) and DHC's motion to strike (ECF No. 37) be **DENIED** as moot.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 29, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2022.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager